**The STATE of Ohio,**

v.

**HORVATH.**

 2004-Ohio-7327.]

Hamilton County Municipal Court, Ohio.

No. M03CRB42129.

Decided July 1, 2004.

Johanna Hutchins, for plaintiff.

Alan H. Fischoff, for defendant.

ELIZABETH B. MATTINGLY, Judge.

{¶ 1} This case has a long and tortured history, apparently even before court proceedings began. Defendant Horvath is charged with menacing in violation of Sharonville Municipal Code 537–06, a misdemeanor of the fourth degree that is identical to R.C. 2903.22. The prosecuting witness in this case is a neighbor with whom defendant shared a common but disputed property line.

{¶ 2} The case was initially litigated in mayor's court in Sharonville, Ohio. It was transferred to this court when defendant Horvath filed a jury demand.[1]

---

1. When defendant entered a no contest plea, his demand for a jury trial was waived by virtue of his plea. *State ex rel. Stern v. Mascio* (1996), 75 Ohio St.3d 422, 662 N.E.2d 370.

Defendant was arraigned in municipal court on November 6, 2003, and requested a trial, which was initially set for January 7, 2004, and continued by request of the parties.

{¶ 3} On January 21, 2004, defendant, who was then being represented by attorney John Whitehurst, entered a plea of no contest. As the prosecutor read the charge:

> On October 3, 2003, Mr. Horvath caused another to fear for his personal safety by threatening him verbally. This has been an ongoing dispute between the adjoining property owners.

{¶ 4} When asked by the court to further explain "threatening," the prosecutor continued:

> There is a property dispute between the two. Mr. Horvath seems to think he owns more property than he does. He threatened the adjoining neighbor, used the expletive—I am ripping your face off, leave my property alone. I'll take care of this if you won't leave me alone—things of that nature.

{¶ 5} In response to the court's subsequent inquiry, Horvath acknowledged that he understood that by pleading no contest he was admitting those facts. Horvath then affirmed that he had spoken to his attorney about the plea. At this point, his attorney, Whitehurst, volunteered the following:

> Yes, we have had a good opportunity to discuss this. * * * With your delays in here. We've had a lot of opportunity.

{¶ 6} The court then asked defendant Horvath if he understood that he was giving up his right to a trial and asked him if he understood that the maximum penalty was 30 days in jail, a $250 fine, or anything less. Horvath replied that he understood.

{¶ 7} When asked if he had any comment on the facts, defendant's attorney noted that the issues between the prosecuting witness and the defendant arose from a genuine property dispute that could best be resolved by a survey of the property line. He further noted:

> I feel that through pleading this out and through the survey, we will get a successful resolution to this matter; therefore, look forward to the Court considering that we do have what looks like to be a proper resolution of the matter.

{¶ 8} During further discussion of when a survey could be accomplished to resolve the property issue, the officer on the case noted that the problem between these two neighbors had been going on before the October 3, 2004 incident at issue here. Both the prosecuting witness and the defendant agreed to pay one-half of the cost of the survey, and sentencing on the menacing charge was continued until March 1, 2004, when the survey would be completed. During the

colloquy that followed, the prosecuting witness expressed his concern that the defendant might not cease to threaten his physical well-being in the interim. The defendant noted actions that the prosecuting witness had taken to injure his property. As to the latter, attorney Whitehurst noted that any issues relating to defendant's dogs were not before the court.

{¶ 9} On March 1, 2004, the court was informed that the survey had been completed. Sentencing was then stayed for defendant to be evaluated by the court clinic. A victim-impact statement was also requested for sentencing that would occur on April 6, 2004.

{¶ 10} On April 9, 2004,[2] the court received an 8½-page, single-spaced report from the court clinic that recommended that defendant could benefit from pursuing certain treatment modalities. On April 9, 2004, the court was informed that Horvath had terminated the services of attorney Whitehurst and retained attorney Alan Fischoff to represent him at sentencing. Attorney Fischoff indicated that Horvath had come to him in late March, 2004, apparently not understanding exactly what had happened when he had pled no contest two and one-half months earlier. Attorney Fischoff reiterated Horvath's position that he had merely followed the advice his attorney had given him even though he did not want to plead to the charge. Attorney Fischoff then orally requested that Horvath be permitted to withdraw his plea.

{¶ 11} In response, the state noted that there had been many pretrials in the case and many discussions with Horvath's attorney and that none of these objections were raised the first time sentencing had been set to occur on March 1, 2004. The state believed that defendant was raising issues now only because he had become aware that the court clinic was recommending treatment.

{¶ 12} The court then asked Horvath to state exactly what he had misunderstood when he entered his plea.[3] Defendant replied:

From what he had told me, he told me that to go ahead and do that. Really, I didn't want to. I wanted to plead not guilty, and it was his decision for me to go ahead and plead no contest, Your Honor.

{¶ 13} The court then set a hearing on defendant's oral motion to vacate his plea for April 30, 2004, which was later continued at state's request to May 12, 2004.

{¶ 14} On May 12, 2004, Horvath's attorney reiterated that defendant sought to vacate his plea because he didn't understand that he was entering the plea and

---

2. A continuance of sentencing was apparently then requested by the state from April 6, 2004, to April 9, 2004.

3. This was necessary because defendant had not filed a written motion to vacate his plea.

that he had two defenses to the case. In sum, defendant was claiming that the plea was not made knowingly, intelligently, and voluntarily.

{¶ 15} Horvath testified at the hearing on this matter that he didn't understand the no contest plea and that he had wanted his girlfriend, Gwen Keller, to testify at the trial on January 21, 2004. He stated that he was told she couldn't do so. Horvath further indicated that the Sharonville police kept making him think that he was going to lose. So, he figured, he would just go ahead and get this over with and that's what he did.

{¶ 16} Upon cross-examination, defendant admitted he has an associate's degree and stated, "I was just entering a plea to get this over with. And not just that, but thinking that I had no chance with this case."

{¶ 17} Horvath's first attorney, John Whitehurst, then testified that he had discussed this charge with Horvath quite a bit both at mayor's court and in this court. Indeed, attorney Whitehurst had thoroughly explained the charges and possible defenses to Horvath both verbally and in writing. Attorney Whitehurst was prepared to go to trial on January 21, 2004, and at the last minute, defendant Horvath did not want to go to trial. The attorney then conversed in the hall with Horvath and the prosecutor for about 20 or 30 minutes. Attorney Whitehurst said that he explained to Horvath that he had a valid defense and he appeared to understand. He further noted that Horvath has previously pled out to a traffic case in this court and advised Horvath that he should discount the comments of the Sharonville police concerning his chances of winning the case. Moreover, both attorney Whitehurst and Keller testified that Keller was present in court on January 21, 2004, when defendant entered his plea. Attorney Whitehurst testified that he had been fully prepared to present defendant's witnesses at trial on that date to defend the case.

{¶ 18} Defendant's girlfriend, Gwen Miller, noted that Officer Rhodes had told her that she was not allowed to testify for defendant, since she was his girlfriend. She also stated that attorney Whitehurst told her she could not testify in the case.

{¶ 19} In considering these facts, the court notes that the First District Court of Appeals in its decision in *State v. McNeil* (2001), 146 Ohio App.3d 173, 175–176, 765 N.E.2d 884, has recently defined the standards to be applied to determination of a motion to vacate a plea:

It is well established that, even though a defendant does not have an absolute right to withdraw a plea prior to sentencing, a presentence motion to withdraw a guilty plea should be "freely and liberally granted." Although such a motion is to be treated liberally, the trial court's decision is still ultimately one of discretion. In determining whether the trial court has properly

exercised its discretion, this court is aided by the following factors: (1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim. R. 11 hearing before entering the plea, (3) whether full hearing was held on the withdrawal motion, and (4) whether the trial court gave full and fair consideration to the motion. In addition to these factors, there are other considerations, including (1) whether the motion was made within a reasonable time; (2) whether the motion set out specific reasons for the withdrawal; (3) whether the accused understood the nature of the charges; (4) whether the accused was perhaps not guilty or had a complete defense to the charges.

(Footnotes omitted.) See, also, *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Peterseim* (1980), 68 Ohio App.2d 211, 428 N.E.2d 863; and *State v. Fish* (1995), 104 Ohio App.3d 236, 661 N.E.2d 788.

{¶ 20} In regard to this specific case, the court finds that attorney Whitehurst is an experienced attorney who visited the property at issue, briefed his client verbally and in writing about the specifics of the case, spoke extensively with defendant prior to entry of his plea, and had witnesses present in court prepared to testify at the trial set on January 21, 2004.

{¶ 21} In addition, the court finds that Horvath was given all the information required to be provided to him in regard to a misdemeanor plea pursuant to Crim.R. 11.

{¶ 22} The court conducted a full hearing on defendant's motion to vacate his plea, even though the motion was not filed at the first time set for sentencing on March 1, 2004. Indeed, the oral motion to vacate the plea was made three months after defendant entered his no contest plea. If defendant had concerns about entering the plea, he should have raised his concerns on the initial sentencing date. It was not reasonable for defendant to delay his request to vacate his plea until a month after the court ordered an evaluation by the court clinic and had requested a victim-impact statement.

{¶ 23} Horvath's articulated reasons for wanting to vacate his plea do not state any facts unknown to him at the time of his plea. Since he has an associate's degree, it is unlikely he would not know that police officers do not have the legal training and experience that a licensed attorney does. The court finds it incredible that he would be more influenced by the alleged remarks of police officers than the advice offered by a trained and experienced member of the bar.

{¶ 24} The court finds that Horvath understood the nature of the charge against him and knowingly, intelligently, and voluntarily entered a plea on January 21, 2004, to avoid the risks of trial. Moreover, the court finds that attorney Whitehurst discussed defendant's defenses with him prior to entry of

the plea. Even at hearing on this motion to vacate plea, while defendant alluded to applicable defenses, no specific defenses to this menacing charge were mentioned. It is therefore impossible for this court to assess the potential validity of those defenses.

{¶ 25} For the above stated reasons, defendant Horvath's motion to vacate his plea is denied.

So ordered.